UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


WILMER DANE

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE, ET AL

CIVIL ACTION

NUMBER 07-138-RET-SCR


**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, June 15, 2010.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WILMER DANE

VERSUS

BOARD OF SUPERVISORS OF LOUISIANA
STATE UNIVERSITY AND AGRICULTURAL
AND MECHANICAL COLLEGE, ET AL

CIVIL ACTION

NUMBER 07-138-RET-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is a Motion for Summary Judgment filed by
defendant Board of Supervisors of Louisiana State University and
Agricultural and Mechanical College ("LSU").  Record document
number 40.  Also before the court is a Motion for Summary Judgment
filed by defendant Jeffrey Gleason.  Record document number 41.
Plaintiff filed one memorandum in opposition to both motions.[1]

A careful review of the summary judgment evidence in light of
the applicable law, supports the recommendation that Gleason's
motion be granted and that LSU's motion be granted only in part.

## Background

Beginning in November 1999, plaintiff Wilmer Dane was employed
as an assistant director for LSU's Louisiana Fire and Emergency
Training Institute ("FETI").  Plaintiff's supervisor and the
director of FETI at the time was Carrol Herring.  During this same

---

[1] Record document number 45.  Both defendants filed replies.
Record document numbers 53 and 56.

time period defendant Gleason was an associate director who also reported to Herring.  In late November 2005 Herring announced his retirement.  Gleason was appointed interim director and then later officially appointed the new director of FETI, the position he currently holds.  Gleason notified the plaintiff on February 10, 2006 that his assistant director position would be eliminated and his job terminated effective May 11, 2006.

Plaintiff filed suit in state court against defendants LSU and Gleason alleging violations of federal and state laws, specifically, 42 U.S.C. § 1983, 42 U.S.C. § 2000e, et seq.("Title VII"), LSA-R.S. 23:967 and Louisiana Civil Code Article 2315. Plaintiff claimed that during his employment he consistently reported and complained to Herring that Gleason engaged in workplace conduct which constituted sexual harassment of other FETI employees.  Plaintiff also alleged that after Hurricane Katrina, he acted with another FETI assistant director, Buddy Robison, to report Gleason's inappropriate use of FETI property and documents. Plaintiff asserted that because of these actions, LSU and Gleason retaliated against him by terminating his employment in violation of Title VII, the First Amendment, and LSA-R.S. 23:967.  Plaintiff also asserted that the defendants' actions constituted intentional infliction of emotional distress in violation of state tort law. Defendants removed the case to this court based on federal question jurisdiction.

Defendant LSU moved for summary judgment as to plaintiff's retaliation claims under Title VII and LSA-R.S. 23:967 and plaintiff's claim for intentional infliction of emotional distress.[2] In support of its motion LSU relied on a statement of material facts,[3] Gleason's affidavit (with attachments), the affidavit of Venna Jones (with attachments), and excerpts from the depositions of the plaintiff, Gleason, Herring, Jennifer Normand, James Fernandez, Debbie Dane, David Hurlbert, Carolyn Sharp, David Newman and Troy Austin.[4]

Defendant Gleason moved for summary judgment as to plaintiff's First Amendment retaliation claim under § 1983 and the plaintiff's claim for intentional infliction of emotional distress.[5]  Gleason

---

[2] Although defendant LSU also moved for summary judgment as to a sexual harassment claim under Title VII and a retaliation claim under the First Amendment, the plaintiff clarified in his opposition memorandum that he is not asserting claims against LSU under these theories.  Record document number 45, p. 1-2.

[3] Record document number 40-4.

[4] FETI reported to Fernandez, whose title was Executive Director of the National Center for Security, Research and Training.  Jones, Normand and Hurlbert held positions in LSU's Human Resource Management Department.
Since LSU provided a list of its summary judgment evidence with the corresponding exhibit numbers in record document number 40 it is unnecessary to again list and cite each one separately.

[5] Gleason also moved for summary judgment as to any claim against him under Title VII.  Plaintiff stated that he is not bringing a Title VII claim against Gleason individually.  Record document number 45, p. 1.

relied on a statement of material facts,[6] his affidavit (with attachments),[7] and excerpts from his deposition and the depositions of Herring, Fernandez, Hurlbert and Normand.[8]   Gleason also submitted various documents related to the plaintiff's employment, such as papers related to his hiring and job description,[9] a copy of the university's sexual harassment policy,[10] an excerpt from LSU's official staff handbook,[11] three letters written on December 19, 2005 by Troy Austin, Carolyn Sharp and Debbie Dane to Marian Caillier, assistant vice chancellor of LSU Human Resource Management,[12] Gleason's February 10, 2006 letter notifying the plaintiff of his termination effective May 11, 2006,[13] and a copy of LSU's policy governing employees' use of university property.[14]

Plaintiff opposed both motion with an opposition to defendants' statements of material facts,[15] and excerpts from his

---

[6] Record document number 41-9.

[7] Gleason Exhibit 1.

[8] Gleason Exhibits 3, 7, 11, 12, and 13, respectively.

[9] Gleason Exhibits 2 and 4.

[10] Gleason Exhibit 5.

[11] Gleason Exhibit 6.

[12] Gleason Exhibits 8-10.

[13] Gleason Exhibit 14.

[14] Gleason Exhibit 15.

[15] Record document number 46.

deposition and the depositions of Herring, Lubna Culbert, Eddie Pyle, Austin, Fernandez, Normand and Hurlbert.[16]  In his opposition the plaintiff clarified the claims he is asserting against each defendant and asserted that the summary judgment evidence demonstrates a genuine dispute for trial on each of his claims - Title VII retaliation, First Amendment retaliation, reprisal under LSA-R.S. 23:967 and intentional infliction of emotional distress.

Based on the applicable law set forth below and analysis of the summary judgment evidence, plaintiff's arguments are persuasive only as to his Title VII retaliation claim against LSU.

## Summary Judgment Standard

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some

---

[16] Since the plaintiff's exhibit numbers with a description of each exhibit are listed in record document number 44 it is unnecessary to again list and cite each one separately.

metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.  The court may not make credibility findings, weigh the evidence, or resolve factual disputes.  *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).  On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

## Applicable Law

The applicable substantive law dictates which facts are material. *Canady v. Bossier Parish School Bd.*, 240 F.3d 437, 439 (5th Cir. 2001).  In this case the court must apply the law applicable to the federal and state law claims alleged by the plaintiff: (1) against defendant Gleason, a 42 U.S.C. § 1983 First Amendment retaliation claim and a state law claim for intentional infliction of emotional distress; (2) against defendant LSU, a

6

Title VII retaliation claim and state law claims for whistleblower protection under LSA-R.S. 23:967 and a claim for intentional infliction of emotional distress.

### First Amendment Retaliation Claim

Under § 1983 a plaintiff must establish the deprivation of a right secured by the Constitution or laws of the United States, committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). Plaintiff's § 1983 claim in this case is grounded on the First and Fourteenth Amendments. The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. A First Amendment retaliation claim requires proof of the following elements: (1) an adverse employment action; (2) speech involving a matter of public concern; (3) the interest in speaking outweighs the employer's interest in promoting efficiency in the workplace, and (4) the employee's speech motivated the employer's adverse employment action. *Charles v. Grief*, 522 F.3d 508, 510, n. 2 (5th Cir. 2008).

The Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006), added a threshold layer to this analysis. *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). *Garcetti* holds that "when public employees make statements pursuant to their official duties, the employees are not speaking as

7

citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421, 126 S.Ct. at 1960.  Therefore, the court must initially determine whether the employee's speech is pursuant to his official duties. Speech that is required by a plaintiff's job duties or part of his official duties is not protected by the First Amendment.  *Id.; Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693-94 (5th Cir. 2007).  As summed up by the Fifth Circuit in *Davis*: "Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection." *Davis*, 518 F.3d at 313.

After *Garcetti* the focus is on the role the employee occupied when he communicated rather than the content of the speech. *Williams,* 480 F.3d at 692.  "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Id*. Neither a formal job description, speaking on the subject matter of one's employment, or the fact that a public employee's statements are made internally is dispositive. *Id.; Garcetti*, 547 U.S. at 421, 423, 126 S.Ct. at 1959, 1961.  However, cases are consistent in holding that when a public employee raises complaints or concerns about his job duties through the chain of command at his work, that speech is undertaken in the course of performing his job.  "If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the

chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen." *Davis*, 518 F.3d at 313.

**Title VII Retaliation Claim**

A plaintiff establishes a prima facie case for unlawful retaliation under 42 U.S.C. § 2000e-3(a) by proving: (1) that he or she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal connection exists between the protected activity and the adverse employment action. *Lemaire v. State of Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007).

An employee has engaged in protected activity if he or she has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. *Grimes v. Texas Dept. of Mental Health*, 102 F.3d 137, 140 (5th Cir.1996). The opposition clause requires the employee to show that he or she had at least a reasonable belief that the practices opposed were unlawful. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). However, proof of an actual unlawful employment practice is not required to state a claim for unlawful retaliation. *Id.*, at 309, n.10, *citing*, *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-41 (5th Cir. 1981).

Title VII's retaliation provision is not limited to actions

9

and harms that relate to employment or occur at the workplace.  It covers employer actions materially adverse to a reasonable employee, that is, actions that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67, 126 S.Ct. 2405, 2415 (2006); *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008).[17]

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard.  A plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions to establish the causal link element of a prima facie case. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).  Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 562, n. 28 (5th Cir. 2007); *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

If the plaintiff establishes a prima facie case of retaliation, the defendant must come forward with a legitimate, nonretaliatory reason for its adverse employment action.  Once the

_____

[17] *Burlington* overruled Fifth Circuit precedent which limited actionable Title VII retaliatory conduct to ultimate employment decisions. *Burlington*, 126 S.Ct. at 2410.

defendant advances its reason, the focus becomes the ultimate issue in a retaliation case, which is whether the employer retaliated against the employee because he or she engaged in protected activity.  Although not in itself conclusive, the timing of an employer's actions can be a significant factor in the court's analysis of a retaliation claim.  *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).

In Title VII retaliation claims the recent Fifth Circuit decision in *Smith v. Xerox Corp.*[18] modified the law applicable to a plaintiff's burden of proving retaliation.   In *Smith* the defendant challenged the district court instructing the jury on a mixed-motive theory of causation, which allowed the jury to find for the plaintiff on her retaliation claim with only a "motivating factor" rather than "but-for" causation.[19]  The court considered the Supreme Court's analysis of the statutory words "because of" in *Gross v. FBL Financial Services, Inc.,* an ADEA case.[20]   The court

---

[18] 602 F.3d 320 (5th Cir. 2010).

[19] The plaintiff in *Smith* brought claims of discrimination based on gender, age and retaliation.  The jury returned a verdict in favor of the defendant on the claims of gender and age discrimination, but on the retaliation claim found in Smith's favor.  The jury "concluded in a special interrogatory that Smith proved her EEOC charge was a motivating factor in Xerox's termination decision."  *Id*.

[20] ____ U.S. ____, 129 S.Ct. 2343 (2009).  In *Gross* the Supreme Court held that under the federal age discrimination statute (ADEA), the ordinary meaning of the words, "because of" require a showing that the adverse employment action would not have occurred
(continued...)

concluded that *Gross* was not controlling because it was an ADEA case that did not involve the standard for causation and shifting burdens in a Title VII retaliation case.   Therefore, the court looked to its Title VII retaliation precedents based on *Price Waterhouse v. Hopkins*,[21] and the Supreme Court decision in *Desert Palace, Inc. v. Costa*.[22]   The court concluded that a mixed-motive theory may still be used in Title VII retaliation cases, and a plaintiff is not required to have direct evidence of retaliation in order to proceed under this theory.

Prior to *Smith*, the Fifth Circuit had stated that in order for a plaintiff to prevail on a Title VII retaliation claim, the plaintiff had to prove that the adverse employment action would not have occurred but for the protected activity.   *Strong v. University Health Care System, L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007);[23] *Septimus* v. *University of Houston*, 399 F.3d 601, 608-09 (5th Cir. 2005); *Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000).   Stated another way,"[w]hether or not there were other reasons for the employer's  actions, the employee will prevail only by proving that 'but for' the protected activity she

---

[20](...continued)
but for the prohibitive motive. *Id*., at 2350.

[21] 490 U.S. 228, 109 S.Ct. 1775 (1989).

[22] 539 U.S. 90, 123 S.Ct. 2148 (2003).

[23] "We think our decision in *Septimus* leaves no doubt that the but for standard controls."   *Strong*, 482 F.3d at 806.

would not have been subjected to the action of which she claims." *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984).  It is now apparent from the Fifth Circuit's analysis in *Smith* that a plaintiff may also satisfy the burden of proving retaliation under Title VII by demonstrating that unlawful retaliation was a motivating factor in the employer's adverse employment decision.  Consequently, to withstand summary judgment the plaintiff, using direct or circumstantial evidence, must present sufficient evidence for a reasonable jury to conclude that retaliation was a motivating factor for the defendant's employment action.  *See*, *Roberson v. Alltel Information Services*, 373 F.3d 647, 652 (5th Cir. 2004), *citing*, *Desert Palace*, 539 U.S. at 101, 123 S.Ct. at 2155.

**Louisiana Whistleblower Protection Claim**

The Louisiana whistleblower statute, LSA-R.S. 23:967 provides in pertinent part:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

The statute also states: "Reprisal includes firing, layoff,

13

loss of benefits, or any discriminatory action the court finds was taken as a result of an action by the employee that is protected" under the statute.  LSA-R.S. 23:967(C)(1).  An employee who suffers reprisal may bring a civil action against the employer for damages, reasonable attorney fees, and court costs.  LSA-R.S. 23:967(B).  While the Louisiana Supreme Court has not interpreted this statute, it is the consensus thus far of the lower Louisiana courts that the employer must have committed an actual violation of state law.  *Beard v. Seacoast Elec., Inc.*, 2006-1244 (La.App. 4 Cir. 2007), 951 So.2d 1168; *Accardo v. Louisiana Services & Indem. Co.*, 2005-2377 (La.App. 1 Cir. 6/21/06), 943 So.2d 381, 387; *Hale v. Touro Infirmary*, 2004-0003 (La.App. 4 Cir. 11/3/04), 886 So.2d 1210, *writ denied*, 2005-0103 (La. 3/24/05), 896 So.2d 1036; *Puig v. Greater New Orleans Expressway Comm'n*, 2000-924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, *writ denied*, 2000-3531 (La. 3/9/01), 786 So.2d 731; *Diaz v. Superior Energy Services LLC*, 341 Fed.Appx. 26 (5th Cir. 2009).  Therefore, under LSA-R.S. 23:967 the plaintiff must prove an actual violation of state law, not just a good faith belief that a law was broken.[24]

Other than this difference, the standards governing claims under Louisiana's whistleblower statute and Title VII retaliation claims are materially indistinguishable.  *Strong*, *supra*.

---

[24] Proof of an actual unlawful employment practice is not required for a Title VII retaliation claim.  *Long*, *supra*.

**Intentional Infliction of Emotional Distress Claim**

Plaintiff also asserted a claim for intentional infliction of emotional distress under Louisiana Civil Code Article 2315.  To recover for intentional infliction of emotional distress, a plaintiff has the burden of proving: (1) that the conduct of the defendants was extreme and outrageous; (2) that the emotional distress suffered by him was severe; and (3) that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct.  *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991); *Moresi v. State, Department of Wildlife and Fisheries*, 567 So.2d 1081, 1095 (La. 1990); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994).  The conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community.  *Id.* Liability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it.  *White*, 585 So.2d at 1210.

## Analysis

### There is no genuine dispute for trial on the First Amendment retaliation claim against Gleason

Gleason argued that he is entitled to summary judgment on plaintiff's § 1983 First Amendment retaliation claim, because the

15

evidence shows the plaintiff's speech was not protected by the First Amendment. Gleason's arguments and evidence demonstrate that there is no genuine dispute for trial on the question of whether plaintiff's speech was pursuant to his official duties and protected by the First Amendment.

Plaintiff conceded that the issue raised by Gleason's motion is crucial to his First Amendment retaliation claim. Although the plaintiff argued that the role or capacity in which he made his statements is very much in dispute, he did not present any facts to dispute the evidence relied on by Gleason. Plaintiff essentially attempted to distinguish the facts of this case from other cases where the courts have determined that the speech was pursuant to official duties. Plaintiff's attempt is unavailing. Just because the plaintiff's circumstances do not match those of the district attorney in *Garcetti*, the human resources director in *Boykin*,[25] or the athletic director in *Williams* does not mean that there should be a different result in this case. The undisputed facts relied on by Gleason lead to the same conclusion because they support only one reasonable inference – the plaintiff's complaints were voiced solely in his official role as an assistant director/employee of the university's FETI program and not in his role as a citizen.

The summary judgment evidence shows that as an employee and

---

[25] *Boykin v. City of Baton Rouge,* 439 F.Supp.2d 605 (M.D.La. 2006).

assistant director of FETI, the plaintiff had an obligation to report to any university official, supervisor, or Human Resource Management, incidents of sexual harassment using the university's sexual harassment policy and procedures. Plaintiff's failure to report any improper actions or any misuse of property could result in his termination.[26] Plaintiff testified that he regularly complained about Gleason's alleged sexual harassment to Herring, who was his supervisor and FETI's Director. When Herring retired as director, the plaintiff participated in making the same type of complaints to another supervisor, Fernandez. Similarly, when the plaintiff decided to speak out against Gleason's alleged attempt to obtain reimbursement for FETI property that was not missing, he reported it to Herring who then turned the information over to Fernandez.[27] Thus, the plaintiff never went outside the workplace or the established lines of authority in the workplace to complain about the alleged sexual harassment or misuse of university property by Gleason.

There is no evidence that the plaintiff's reporting obligations were part of his specific job description or specific duties as assistant director. Nevertheless, it is clear that the plaintiff's

---

[26] LSU exhibit D-12, Jones affidavit with attachments); Gleason exhibits 5, 6 and 15.

[27] *See*, plaintiff depo., pp. 47, 69, 89-90, 114, 119-23, 126-28, 133-35, 139, 141, 181-82, 203-10, 218, 221, 238, 240, 244, 261; Herring depo., pp. 20, 36-38, 41-42; Fernandez depo., pp. 47-53, 61.

employment as a FETI assistant director included the duty to tell
his supervisors or university officials of the specific unlawful
conduct he believed was taking place, and that this was the role he
occupied when he complained to officials in his chain of command.
The only reasonable inference supported by the uncontradicted
evidence is that the plaintiff's reports and complaints were made
in the course of performing his job and pursuant to his official
duties.  Therefore, the plaintiff's reports and complaints are not
entitled to First Amendment protection.

## There is a genuine dispute for trial
## on the Title VII retaliation claim against LSU

LSU argued that the plaintiff cannot show Gleason knew the
plaintiff engaged in protected activity at the time Gleason decided
to eliminate his position, and that the plaintiff cannot dispute
Gleason's legitimate, nonretaliatory reason for his decision.[28]  In
support of its position, LSU relied on Gleason's deposition
testimony and affidavit, and the deposition testimony of the
plaintiff, Normand, Herring, Hurlbert and Ferguson.  Plaintiff
essentially argued that he has presented sufficient evidence to

---

[28]   LSU did not dispute that the plaintiff suffered an adverse
employment action, nor the evidence that the plaintiff engaged in
the protected activity of complaining to Herring and Fernandez
about Gleason.  Therefore, it is unnecessary to address or resolve
LSU's argument that the plaintiff cannot show protected activity by
relying on his spouse, Debbie Dane's complaints to LSU's Human
Resources Management Department.  Record document number 40-4,
p.14.

18

contradict the defendant's assertions and defeat summary judgment. Without weighing the evidence or making any credibility assessments,[29] review of the relevant evidence supports the plaintiff's position.

Contrary to LSU's arguments, the plaintiff has come forward with sufficient evidence to make a prima facie case of retaliation. According to Gleason's affidavit, Gleason discussed his proposed reorganization, which included eliminating the plaintiff's position, in late November and December with Fernandez and Hurlbert. Gleason did not give the exact date when he made the decision to eliminate the plaintiff's position. He only stated that he made the decision in December 2005 and at that time he did not know that the plaintiff had complained about his behavior to Fernandez and Herring.[30] Deposition testimony indicates that prior to December 2005, the plaintiff made numerous complaints directly to Gleason and Herring about Gleason's alleged workplace sexual harassment, and that Herring spoke to Gleason about some of these complaints.[31] Additional deposition testimony supports a reasonable

---

[29] At the summary judgment stage the court cannot make credibility determinations or weigh any evidence. *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.*, 336 F.3d 410, 412 (5th Cir. 2003).

[30] Gleason affidavit, ¶¶ 18, 19 and 23.

[31] Plaintiff depo., pp. 89-92, 97, 121-28, 132-36, 139, 141-42, 181-82, 238-44, 261, 285-87; Herring depo., p. 20; Culbert depo., pp. 26-27.

inference that Fernandez informed Gleason that the plaintiff and others met with Fernandez in late November/early December 2005 to voice their concerns about Gleason's appointment and what they believed were incidents of gender-based harassment by Gleason.[32]

Considered as a whole and viewed in the light most favorable to the plaintiff, this evidence is sufficient for a reasonable trier of fact to infer that at the time he made his decision to terminate the plaintiff, Gleason was aware of the plaintiff's protected activity, i.e. the plaintiff had complained to his supervisors about conduct by Gleason which the plaintiff reasonably believed was unlawful sexual harassment.[33]  This same evidence also supports a reasonable inference of close timing between some of the plaintiff's protected activity - the meeting with Fernandez to oppose Gleason and his alleged sexual harassment - and Gleason's

---

[32] Fernandez depo., pp. 47-57, 60-61; plaintiff depo., pp. 174-75; Herring depo., p. 41.

[33] Neither Gleason's affidavit or deposition testimony give the date he made his decision to terminate the plaintiff.  However, the evidence supports a reasonable inference that it was when Gleason met with Hurlbert on December 19 or 20, 2005.  There is also no evidence of the exact date of the plaintiff's meeting with Fernandez, but it clearly would have been before December 19, 2005, the date Austin, Sharp and the plaintiff's spouse followed Fernandez's recommendation and filed written complaints about Gleason with the LSU human resources department.  Fernandez depo., pp. 52-56, 60-61, 63; Gleason affidavit, ¶¶ 3, 18 and 19; Gleason depo., pp. 133-34; Hurlbert depo., pp. 9-11, 25-30; Gleason exhibits 8, 9 and 10.

decision to terminate the plaintiff's employment.[34]

LSU principally relied on Gleason's affidavit to establish a legitimate, nonretaliatory reason for Gleason's adverse employment action. Gleason's long affidavit contains 20 paragraphs of explanations and reasons for eliminating the plaintiff's position. Without reciting the entire affidavit, a concise summary of Gleason's explanation is that the decision was necessary to fulfill his goal of reorganizing and streamlining FETI, and reallocating its financial resources to fund new initiatives. However, parts of Gleason's affidavit are ambiguous and a careful review of it reveals inconsistencies which could support a reasonable inference that a purpose of the reorganization was to get rid of the plaintiff.[35]

---

[34] LSU concedes that the plaintiff's meeting with Fernandez in which he and others complained about Gleason occurred in close proximity to Gleason's decision to eliminate plaintiff's position. Record document number 40-4, p. 15.

[35] For example, Gleason stated that the financial impact of his organizational changes was more than $300,000. Other than to state that not filling his own vacancy (associate director) saved approximately $90,000, Gleason failed to explain how the elimination of the plaintiff and other employees enabled him to absorb the financial impact of the changes he wanted to make. Gleason also stated that the plaintiff's duties were either absorbed by him or two regional managers, and that he planned to and did assume the role of FETI liason as well as oversight of the Municipal Regional Training Program. But later in his affidavit Gleason stated that assistant director David Fultz now oversees the Municipal Regional Training Programs previously supervised by the plaintiff. Furthermore, Gleason's affidavit and attached exhibits, including the organizational charts, show that when Gleason took over as interim director there three assistant directors. His new
(continued...)

Considering this evidence along with the evidence relevant to the plaintiff's prima facie case,[36] a reasonable trier of fact could find that Gleason had knowledge of the plaintiff's protected activity at the time he made his decision, and that this knowledge was a motivating factor in terminating the plaintiff by reorganizing FETI to eliminate the assistant director position he occupied.

### There is no genuine dispute for trial on the Louisiana Whistleblower Protection claim against LSU

LSU argued that the plaintiff's claim under the Louisiana Whistleblower Protection statute, LSA-R.S. 23:967, must be dismissed because the plaintiff cannot show an actual violation of state law.  Plaintiff contended that the first paragraph of the statute requires a showing that the employer's act or practice was in violation of state law, but this requirement does not apply under the next two subparts which refer only to acts or practices in "violation of law."  According to the plaintiff, this demonstrates that the state law is much broader in scope than

---

[35](...continued)
organizational structure showed only one assistant director position, with elimination of the assistant director positions held by the plaintiff and Buddy Robison.  According to Gleason there are currently three assistant directors, which is the same number there were before his reorganization.

[36] The evidence cited in the analysis of the plaintiff's retaliation claim illustrates why summary judgment is not appropriate, but it is not an exclusive listing of all the evidence that supports this conclusion.

retaliation under Title VII.  Therefore, plaintiff argued, he only needs to identify conduct that either violates state law under LSA-R.S. 23:967(A)(1) or violates state or federal law under the two remaining subsections.

Plaintiff's arguments are unpersuasive.  The case law requires that a plaintiff prove he disclosed, threatened to disclose, or opposed workplace conduct that was an actual violation of state law.  It is not sufficient that the employee reasonably believes there is a violation of law.  The statute requires an employee to prove an actual violation of state law in order to prevail.[37]  Although the plaintiff presented evidence showing that he opposed sexual harassment in the workplace, he did not attempt to prove that LSU violated state law by subjecting him to a hostile environment because of his sex.[38]  Nor is the plaintiff arguing or

_____

[37] *Diaz v. Superior Energy Services, LLC*, 2008 WL 3077071 (E.D. La. August 4, 2008), *aff'd*, 341 Fed.Appx. 26 (5th Cir. 2009); *Accardo, supra.*
To determine issues of state law, the federal court must look to the final decisions of the state's highest court.  In the absence of such a decision, the court must make an *Erie* guess and determine how that court would resolve the issue if presented with the same case.  In making an *Erie* guess the court defers to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise.  *See*, *Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir. 2010).  Here, the plaintiff has not presented any persuasive argument or other authority that this court should not defer to the decisions of the Louisiana appellate courts.

[38] LSU moved for summary judgment as to any claim alleged by the plaintiff based on a theory of hostile environment because of sexual harassment.  Plaintiff clarified in his opposition that he
(continued...)

attempting to prove the alleged fraud he reported, or that the sexual harassment of others he complained about, actually constituted a violation of state law.

Because proof that a workplace/employment act or practice is an actual violation of state law is an element of the plaintiff's claim under LSA-R.S. 23:967, the plaintiff cannot defeat summary judgment merely by asserting that he has identified what he believed to be unlawful practices and was subject to reprisal for disclosing or opposing them.  Plaintiff's failure to come forward with any evidence on this essential element requires summary judgment and dismissal of his claim under LSA-R.S. 23:967 against LSU.

### There is no genuine dispute for trial on the claims for intentional infliction of emotional distress against LSU and Gleason

Plaintiff asserted a state law claim for intentional infliction of emotional distress against defendants LSU and Gleason.  Both defendants moved for summary judgment on this claim.

LSU and Gleason essentially argued that the workplace conduct described by plaintiff does not support a reasonable inference that the conduct was extreme and outrageous.  In other words, it is not the type of egregious conduct which is necessary to support a claim

---

[38](...continued)
is not asserting his own claim for sexual harassment under federal or state law.  Record document number 45, p. 1.

of intentional infliction of emotional distress.  Gleason also argued there is no evidence the plaintiff suffered severe emotional distress, or that the defendants intended to inflict severe emotional distress, or that they knew severe emotional distress was substantially certain to result from their conduct.

Defendants arguments have merit.  Under Louisiana law the threshold is high for establishing intentional infliction of emotional distress in a workplace environment.  Liability is usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time, and the resulting mental anguish or suffering must be extreme or unendurable.[39]

In his opposition the plaintiff asserted that all of the actions/inactions of the defendants combined constituted outrageous behavior and caused him severe and extreme emotional distress. Plaintiff merely rested on this conclusory assertion and failed to cite any summary judgment evidence to support the elements of this claim.[40]   Defendants' motion for summary judgment as to the

---

[39] *See*, *Smith v. Amedisys*, 298 F.3d 434, 449 (5th Cir. 2002), *citing*, *White*, 585 So.2d at 1209.

[40] Plaintiff's opposition consisted of one page, most of which was a recitation of the applicable law.  Plaintiff did not specifically cite or refer to one piece of summary judgment evidence.  For example, there were no citations to any evidence to support the plaintiff's claim that the actions/inactions of Gleason or LSU were extreme/outrageous, or that the defendants' alleged conduct caused the plaintiff severe or serious emotional harm and distress, i.e., extreme mental suffering.  *See*, *Bustamento v. Tucker*, 607 So.2d 532, 538 (La. 1992)(outrageous conduct must cause
(continued...)

plaintiff's state law claim for intentional infliction of emotional distress should be granted.

### Recommendation

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendant Jeffrey Gleason be granted.

It is the further recommendation of the magistrate judge that the Motion for Summary Judgment filed by defendant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College be granted in part, dismissing the plaintiff's state law whistleblower claim under LSA-R.S. 23:967 and his state law claim for intentional infliction of emotional distress, and that the motion be denied as to the plaintiff's Title VII

---

[40](...continued)
serious emotional harm to the plaintiff); *White*, 585 So.2d at 1210 (distress suffered must be such that no reasonable person could be expected to endure it; liability arises only where the mental suffering or anguish is extreme).

The court does not have a duty to comb through the summary judgment record in search of evidence to support the elements of the plaintiff's claim. Once the movant presents a properly supported motion for summary judgment, the non-movant must go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Rule 56, therefore, places on the non-movant the duty to designate the specific facts in the record which create genuine issues precluding summary judgment; the rule does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

retaliation claim.

    Baton Rouge, Louisiana, June 15, 2010.

                         STEPHEN C. RIEDLINGER
                         UNITED STATES MAGISTRATE JUDGE